The court will next call the case of 514-0273, People v. Dennis Edwards. And before we begin, I personally would like to thank both the people and the appellate public defender because I noticed that both of your offices is now sending your briefs electronically, which for me is a very nice perk. And it was that only the civil lawyers were sending them. We couldn't seem to get them out of your offices. So now I see they're coming. And so I would like you to communicate to your bosses that at least, I don't know about the other justices on here, but I'm very happy. If they could come in word, that would be the best. Some are coming in PDF. There's some problems with that. But we sure appreciate it if they come in word. And I noticed that they're coming, and I just wanted to say I'm very grateful, and I guess Justice Chaffetz is too at this point. Justice Barberos doesn't have that experience yet. But anyway, we have two excellent prosecutors, ladies, so. Mr. Whitney. Thank you. Good morning, Your Honors. May it please the Court. My name is Richard Whitney, and I'm representing the defendant, Ellen Steps Edwards, in this clause. The parties in this case agree that when a recorded statement by a criminal defendant is barred due to a violation of the Miranda Rule, that statement can still be used for purposes of impeachment. That's well settled. That's what the court below rules, and we raise no challenge to that. However, the court later expanded its own ruling at trial, venturing well beyond this narrow exception to the Miranda Rule. When Mr. Edwards informed the court after the state had arrested that he intended to testify, the court ruled over objection that if he testified and made any statement that was inconsistent with anything he said in his recorded statement, then the state would be permitted to play the entirety of its two-hour, 20-minute-long recorded interrogation by police, not just the prior inconsistent statements, but all of them. This was not only a flagrant violation of the most elementary rules of impeachment, it ventured far beyond the exception to Miranda's exclusionary rule, thus underlining the vital constitutional protections afforded by Miranda and impinging upon Mr. Edwards' constitutionally protected right to testify on his own behalf. Mr. Winney, may I just interrupt you? Let's assume hypothetically that the court erred egregiously. Your client didn't testify. Correct. No offer of proof was made. That's also true. No offer of proof was made as to what he would have said had he testified. Correct. So how are we to know? There's nothing in the record. How are we to know that it was this particular ruling that caused the defendant not to testify on his own behalf? I mean, he presented, I think, an alibi defense in this, didn't he? Yes. I'm sorry? He presented an alibi defense, and so it's not as if he sat silent and did nothing in his own defense. He was at the birthday party, as I recall. He was his former girlfriend. That's what he said. And it was a right thing. Well, he didn't testify. No, no, she testified. So my question really is how are any of us to know that it was the effect of the court's ruling that caused your client prejudice and not to testify? We don't know that for a fact, but my position is that we're not required to because the point is that the court law imposed an unfair deterrent to his right to testify, and that in and of itself is reversible error because it goes way beyond, way beyond what is allowed under Oregon v. Haas and the other authorities cited. And like I said, I'm assuming the court made a bad judgment, just to take argument. Right. But what case do you have that says your client hasn't forfeited this right? Well, forfeited in terms of the reviewability of the issue? The reviewability. Yeah. Well, there's two things. First of all, reviewability in general, we cited to the Cregan case, people meet Cregan by our Illinois Supreme Court, saying that the failure to include it in a post-trial motion or otherwise, the review, of course, can still consider constitutional issues that will properly raise the trial, which this was, and make it raised later in a post-conviction petition. But further than that, as far as reviewing the substance of it, we have to bear in mind, I would call attention to loose v. United States in the first instance because, and the concurring opinion in that case, because even though the state cites it for the proposition, that the defendant has to testify in order to allow the court to review, what the U.S. Supreme Court made abundantly clear in that case is this was a very narrow exception, and the only reason there was the requirement that the defendant had to testify was because that was, that dealt with the issue of impeaching a defendant with a prior conviction. And when you impeach a defendant with a prior conviction, there has to be a balancing test. You have to weigh the probative value against the prejudicial effects of the prior conviction. And the court in loose held, well, under that circumstance, you can't conduct a balancing test without hearing what the defendant actually is going to say. And the Brennan concurrence emphasized the narrowness of this issue and said that in cases, and I'm quoting, in which the determinative question turns on legal and not factual considerations, a requirement that a defendant actually testify a trial to preserve the admissibility issue for appeal might not necessarily be appropriate. What about a not-for-appeal? Well, that would have been better. But, you know, we have a situation in this case where the defendant wanted to testify against the advice of counsel. Counsel may not have been aware of what he was going to say. I mean, he could have done the review outside the presence of the jury. That's certainly true. But there's no case law that requires it when you have a violation of the Miranda Rule of this dimension. And in the Easley case, people in the Easley, our Illinois Supreme Court in 1992, cited the concurring opinion in loose in a holding that the court can consider it a constitutional issue whether statements made to a person who falsely represented himself as an agent of a defense attorney have been properly suppressed even though the defendant did not testify. And I haven't looked back at Easley lately to see if there was an offer of proof, but it's clear the defendant did not testify. I don't believe there was an offer of proof in Easley either because the constitutional issue was so important. We cannot allow courts to eviscerate the vital protections of the Miranda Rule with this kind of blunderbuss approach that basically says, well, you know, if you testified, not just the prior inconsistent statements, everything you said in that reported interview is coming in. What about the Patrick case? Can you distinguish that? Patrick, I believe, was one of the cases that was more or less a carbon copy of loose. So the same consideration required. Are you saying Lewis? Loose. L-U-C. I'm sorry. I just wanted to distinguish. Loose v. United States. And I do talk about that in our reply brief. Basically, Patrick was taking the same rule of loose because instead of evaluating federal rule of evidence 609A about impeaching with a prior conviction, it was evaluating the Illinois law people v. Montgomery about impeaching with a prior conviction. So it was basically a cookie cutter of loose v. United States. And so it made the right call because the same considerations apply. You have to do a balancing test if you're evaluating a motion to impeach with a prior conviction under Montgomery. Just as you do under the federal rules of evidence. So I don't think Patrick does anything to change our analysis here. It does not fall within that narrow exception to the Miranda rule. So, you know, again, we can take a closer look easily. But my recollection is that there was no issue there whether there was an offer of proof made easily. Because the constitutional issue loomed large. And reviewing courts have a responsibility to project the parameters of the Miranda exclusionary rule. Because here, of course, it's intended to protect the 5th and 6th and 14th Amendment right to apply to testify on its own behalf. There are no further questions. I'll be happy to address any further argument regarding that. I should add, of course, the relief we're requesting is to vacate the conviction and remand for a new trial. Thank you. Thank you. Ms. Shanahan. Ma'am, please. It's Jennifer Camden. I'm sorry. You know what? I know that. Of course. On behalf of... You don't even look like Ms. Shanahan. I very much apologize. I'll start with the... Okay, Ms. Camden. I'll start with the forfeiture issue since that's what we've been talking about today. The state's forfeiture argument was multi-pronged. First, the state argued that the issue wasn't preserved below because defense counsel didn't specifically object to the admission of any evidence as is required to preserve an evidentiary objection for review. The state argued that the issue's forfeited under Rule 341 because there's not a sufficient record on appeal. As the court pointed out, there's no offer of proof. Also, the taped statement itself, the thing that we're arguing about, is not in the record. Wait, wait, wait. They did not submit the... No, Your Honor. I missed that. I'm sorry. Right. So the actual two hours and whatever that we've been talking about is not even in the record for us to look at? There's nothing for us to look at. That's correct, Your Honor. So it's all theoretical, this whole argument? Absolutely. Absolutely. It really is angel's dancing in the head of a pin, Your Honor. I mean, just out of curiosity, I did obtain and was able to submit as a supplemental record, which I mean, this court accepted it as a supplemental record, the raw tapes, which were more than six hours long. And it was very redacted then. Right. Well, there were about three hours of breaks interspersed, but then there were three solid hours of talking. So 40 minutes of that was redacted, and I don't know what that was. The state indicated in the 2011 filing that it intended to redact some other crimes evidence, so I can make some guesses. No, but I knew I read on the record that tapes had been submitted, so these were not exactly the tapes that were proposed to be played, that the court actually ruled on. Precisely. Okay. So in addition to those forfeiture arguments, there's the additional forfeiture argument, which goes to the Patrick and Luce argument, which is that where a witness does not testify, then that goes beyond simple forfeiture and forfeits any claim of error arising from a trial court's ruling or deferral of a ruling as to the scope of evidence that would be admissible for purposes of impeachment. And that's true whether that is evidence of prior convictions, as in Patrick, or other crimes evidence, as in the Whitehead case, or evidence of threats that would be used to explain a witness's changed story. And evidence of prior consistent statements is no different here. And I also want to point out that unlike the Patrick case, which stated that as a general principle, a court will have sufficient information to rule on the admission of prior convictions, on the admissibility of prior convictions, before a defendant actually testifies, in this case, the court couldn't make any ruling as to whether the defendant's prior statement was going to be inconsistent with his testimony until the defendant testified, or at least until there was some sort of offer of proof where a preliminary ruling could be made. But even that type of ruling would, of course, be the advisory, independent of ultimately what the defendant said. I mean, maybe defense counsel's prediction would have been incorrect. I also want to address the defendant's discussion of the Easley case. Now, in that case, the trial court erroneously held that a defendant's prior statement was voluntary and thus admissible for impeachment. That the defendant didn't testify, but obtained review of the question of whether his prior statement was voluntary. And the Supreme Court, because it had a full record regarding the circumstances under which the defendant made that prior statement, was able to make a legal ruling that, in fact, the circumstances of his prior statement showed that it was involuntary and actually shouldn't have been ruled admissible for impeachment. And this case is distinguishable because in the Easley case, the challenge ruling, which was the ruling about voluntary versus involuntary, didn't depend on the defendant's actual testimony. But here, the statement was—the prior statement had been ruled voluntary, and that's not the ruling that is being challenged here. This Court has no record from which it could rule that the statement was actually inadmissible to impeach the defendant's testimony because the defendant didn't testify. All that this Court has is defense counsel's vague assertion or prediction that some unnamed portion of the defendant's testimony, he predicted, would not contradict the prior statement. And so that's why this case is not like Easley and is like Patrick, Whitehead, and the Averitt case, which also—and the Averitt case also specifically rejected the claim that a defendant was chilled by the Court's ruling or, in that case, deferral of ruling on the scope of the admission of evidence to impeach the defendant. All of these cases, including Harris v. New York, the U.S. Supreme Court case that started all this off, state that a defendant who dislikes a ruling or deferral of ruling on the scope of that evidence that would be used to impeach him needs to go ahead and testify and take his chances and make his argument after the fact. I also want to address the defendant's characterization of the content of the ruling that the Court actually made and discuss the timing of it. The defendant's trial was conducted in January 2014. It was more than three years prior to that, in September 2010, that the circuit court ruled that the defendant's statement was voluntary and thus admissible to impeach him if he testified inconsistently with it. And the extensive record in the years leading up to trial shows that at all times the parties understood that that was a ruling that was a finalist, was dependent on the content of the defendant's testimony. In nearly seven months in 2013, the record shows that the parties conducted negotiations concerning those redactions until in November 2013, excuse me, defense counsel said that the defendant desired to go ahead with the two-hour and 20-minute version of the tape as admissible for impeachment purposes. And then on the third day of trial, after the state had rested, defense counsel in court, while the jury waited in the wings, asked the Court really in essence to narrow its prior ruling beyond its ruling that the statement was admissible for impeachment purposes. Really to narrow that ruling and rule that only, quote, specific instances of, quote, factual discrepancies should be admissible against him. And when the Court asked defense counsel if the defendant was proposing further redactions to this tape, counsel said that only, quote, minute portions with contradictions should be permitted to be played. In other words, yes, he was requesting further redactions. And the Court said no, its prior ruling stood. And again, its prior ruling was that the statement was admissible for impeachment purposes. So nothing changed as a result of this exchange. The prior ruling was that the statement was admissible for impeachment purposes. And that's permissible under Harris and Winsett, the Illinois case. So nothing changed. This was not the sweeping ruling that affirmatively promised the admission of inconsistent or, sorry, of consistent statements. Quite the reverse. The Court simply reaffirmed its prior ruling. It was my understanding, though, that even during trial, they got down to a very narrow, they were still discussing whether this was going to come in. And they got down to negotiating. And there were just a few pieces left. And then they decided not to go ahead and testify. Well, that wasn't during the trial, Your Honor. That was in the months leading up to trial. Okay, that's right. And then during trial, the Court evidently admonished the defendant of his right to testify again? Absolutely. Yeah. Okay. And I also wanted to discuss the impracticality of the defendant's position that's illustrated by what he proposes in the reply brief at page 7 that the trial court should have done. One thing is that he proposes that if any non-inconsistent statement was accidentally played by the State, a limiting instruction could have taken care of it. Well, I think that proves too much because if a limiting instruction could have cured the admission of whatever counsel is predicting that the jury didn't need to hear, then how could he have been chilled by the prospect of that error if it could have been cured by a limiting statement, by a limiting instruction? Ms. Kamen, thank you very much. Again, I apologize. Mr. Whitney? Mr. Whitney, don't you get to select what goes into the record when you bring it up on appeal? Yes, we do. And no tape. We don't have the actual tape that's the issue of what you want us to review or what you want us to find is chilling. Because it's a purely legal issue. The issue here is not what's on the tape. The issue is an improper and limine ruling by the court that said that this defendant could be impeached not only with prior inconsistent statements, but with consistent statements or statements having nothing to do with whatever he testified about. It would be an impeachment of character. That's not permitted. It is elementary. You can only impeach with prior inconsistent statements. But we don't know if it was about character. We don't know if it was about what he was going to say about the alibi defense. We don't know anything about what's on the tape. And obviously there were hours and hours of tape that the two sides were working on trying to get an agreement on. And since the defendant did not testify, we don't know what that impact would have been. Right. But that does not mean as a state of service that there's nothing to review. What we have is an in limine order of the court that it's all coming in that was clearly improper. This court reviews in limine orders all the time. This is nothing unusual. It's the propriety of the in limine order is what we're evaluating here. And that is clearly before us. And whether as the state of service this was an attempted narrowing of the earlier orders of the court or otherwise is irrelevant because you can look at the earlier orders that are cited in our reclined brief. The fact is even if you interpreted it as, well, the court earlier said that it's all coming in. Well, then that order would have been wrong. It still was wrong. You can only impeach with a prior inconsistent statement. You're not allowed to. It's not actually even impeachment if prior consistent or other statements were allowed in. That's what's reviewable here. And that would be consistent with the narrow exception and lose. The only time that there's a need to hear what the actual content is is when there's a balancing test to perform. Otherwise, you protect the integrity of the Miranda rule. So when the state says that there's nothing to evaluate because there was no testimony, that's incorrect. It's the court's in limine ruling is what we're asking this court to evaluate. And there is nothing unusual about this. At one point, opposing counsel said, well, it depended on the content of the defendant's testimony. And the chilling effect would depend on that. That's right. And that is why the court's in limine ruling was incorrect because of what it did. It did not limit any impeaching effects to prior inconsistent statements. This is black-letter case law. Think about what trial courts do when someone wants to impeach with a prior inconsistent statement. Trial courts do not routinely say, well, I'm only going to let you impeach with a prior inconsistent statement if we take it out of the presence of the jury here at first. They allow the impeachment of the prior inconsistent statement. If the other attorney objects, that's not really inconsistent, then there's a limiting instruction. This is very routine. It happens all the time. It's a limiting instruction, or it's the jury's instructed not to. To disregard. That's right. It's not necessarily. It wouldn't have to be a limiting jury instruction, but that you will disregard that testimony because it wasn't proper impeachment. What the court here did was clearly improper because it went well beyond that. It said, if there's anything that is inconsistent, then the whole thing is coming in. That's an extraordinary ruling. It's not justified by anything in the case law under Miranda. It violates the elementary precepts of what impeachment is. And for these reasons, we ask the court to rule that that eliminating ruling was incorrect. And, accordingly, it violated Ms. Redworth's right to testify. And, accordingly, his conviction should be vacated. Thank you, Your Honor. Thank you very much, Mr. Whitley and Ms. Camden. We're going to take a short recess. Thank you.